UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| RANDY BUCKMASTER, <br><br> Plaintiff, <br><br> vs. <br><br> STATE OF SOUTH DAKOTA; LARRY RHODEN, Governor of the State of South Dakota, in official capacity; NICHOLAS LAMB, Secretary of Corrections at Department of Corrections, individual and official capacity; ALEJANDRO REYES, Warden of MDSP at Mike Durfee State Prison, individual and official capacity; BILL SWANGY, Food Service Aramarck [sic] Supervisor at Mike Durfee State Prison, individual and official capacity; TAMMY DOYLE, individual and official capacity; AMBER BABUTZKE, Sergeant of Harmon Unit at MDSP, individual and official capacity; STEPHANIE HAMILTON, Health Services Administration at MDSP, individual and official capacity; and RACHEL TYCZ, Head of Nursing at MDSP, individual and official capacity, <br><br> Defendants. | 4:26-CV-04092-KES <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Randy Buckmaster, an inmate at Mike Durfee State Prison, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1; Docket 1-2. Buckmaster also filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report. Dockets 2, 3.

Additionally, Buckmaster filed a motion for preliminary injunction alleging that he is under risk of imminent harm due to defendants not accommodating his life-threatening food allergy. Docket 5. The court also liberally construes this to be a motion to file a supplemental pleading, because it appears Buckmaster intended to "cover matters subsequently occurring but pertaining to the original cause." *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977) (citation omitted); *see generally* Docket 5. *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citation modified)).

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The decision whether to permit a party to supplement the pleadings is committed to the broad discretion of the district court." *Favors v. Mike*, 2021 WL 222935, at *5 (D. Minn. Jan. 22, 2021) (citing *Minnesota Min. & Mfg. Co. v. Superior Insulating Tape Co.*, 284 F.2d 478, 481 (8th Cir. 1960)). Therefore, to the extent that Buckmaster intended to file a motion to supplement in order to set forth new facts that have occurred since he filed his original complaint, that

motion (Docket 5) is granted, and the court will consider the additional facts in Buckmaster's motion when screening.[1]

## I.    Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Buckmaster reports an average monthly balance for the past six months in his prisoner trust account of $3.01 and average monthly deposits of $26.89.

---

[1] The court only grants Buckmaster's motion to supplement to the extent that it sets out new facts. It is not clear to this court whether Buckmaster intended to alter the defendants named in his complaint, *see* Docket 5 at 3, 5, or to assert additional claims, *see id.* at 3. Therefore, if Buckmaster intends to assert additional claims or alter the defendants he named in his complaint, he must file an amended complaint or move for leave to file a supplemental complaint if the additional claims arose after he filed his initial complaint.

Docket 3 at 1. Based on this information, the court grants Buckmaster's motion for leave to proceed in forma pauperis (Docket 2) and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Buckmaster must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Buckmaster's institution. Buckmaster remains responsible for the entire filing fee as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background Alleged by Buckmaster

The current action stems from events occurring at Mike Durfee State Prison (MDSP). Docket 1 at 1. Count I of Buckmaster's complaint arises from

an incident occurring on February 25, 2026, when he ate from a regular tray at dinner chow. *Id.* at 4. According to Buckmaster, "[t]he menu for this meal was to have Vanilla Frosted Yellow Cake. [He] didn't think twice about it and ate the cake." Docket 1-1 at 4. But after he ate the cake, Buckmaster began to have an allergic reaction. Docket 1 at 4. When he returned to his unit after dinner, the staff sent him to health services. *Id.* At this point, Buckmaster had difficulty breathing, felt his "throat begin to swell shut[,]" and had increased blood pressure. *Id.* (capitalization in original omitted). Buckmaster also "vomited multiple times in a 2 hour period[,]" and "was unable to hold down anything." Docket 1-1 at 4. When Buckmaster arrived at health services, he received an EpiPen shot,[2] which "slowly decreased" his symptoms. Docket 1 at 4.

Buckmaster later discovered that although the menu listed yellow cake with vanilla frosting, this was changed by Aramark Supervisor Bill Swaney[3] to banana frosting. *Id.* Buckmaster claims that he is "Highly Alergic [sic]" to bananas. *Id.* Buckmaster alleges that "there were no menu changes posted, nothing indicating menu was changed and in fact [his] name wasn't even on the special diets list that night." *Id.* (capitalization in original omitted). Buckmaster filed a grievance related to this incident. Docket 1 at 4; Docket 1-1 at 4. After he filed the grievance, Buckmaster discovered that his medical

---

[2] In a supplement attached to his complaint, Buckmaster states that he received a Benadryl shot to alleviate his symptoms. Docket 1-1 at 4.

[3] Buckmaster also refers to this defendant as Bill Swangy. Docket 1 at 1. This court uses Swaney, the spelling Buckmaster uses most consistently. *See generally id.*

5

charts and records were not updated to reflect his allergy to bananas. Docket 1 at 4.

Sometime between May 16 and May 31, 2026, Buckmaster alleges that Swaney, Reyes, and C.J. Williams[4] "again had bananna's [sic] placed inside the blueberry muffin mix or the glaze which covered the blueberry muffins." Docket 5 at 3 (capitalization in original omitted). Buckmaster claims that there were no warning signs or notes on the dietary lists alerting him to this change in the menu. *Id.* Buckmaster visited Health Services for another allergic reaction and discovered that Health Services still did not have a record reflecting Buckmaster's banana allergy. *Id.* Buckmaster alleges that he filed a grievance, but that "DOC Specialist A.D.A. and Grievance Coordinator Tammy Doyle blatantly [refused] to address this issue." *Id.* (capitalization and alteration in original) (footnote omitted).

On June 23, 2026, "the Aramark food menu was changed without warning or dietary notices" and Buckmaster had another allergic reaction because the cake was covered in banana glaze. *Id.* at 5 (capitalization in original omitted). Aramark Supervisor Zach Pierce[5] informed Buckmaster that

---

[4] C.J. Williams is not listed as a defendant. Docket 1 at 1–2; Docket 1-2 at 2–7.

[5] Pierce is not named as a defendant in Buckmaster's complaint. Docket 1 at 1–2; Docket 1-2 at 2–7. Buckmaster states that while Pierce is currently not named as a defendant, he leaves it to the "courts [sic] disgression [sic] whether Zach Pierce should be added to this Action or not." Docket 5 at 5. But this court does not decide which defendants a plaintiff should name in his action. Because Buckmaster has not filed an amended or supplemental complaint including Pierce as a defendant, the court does not include him as a defendant here.

6

his name had not been placed on the Dietary Food Allergy List. *Id.* When Buckmaster arrived at Health Services, he discovered that Health Services still had no record of Buckmaster's banana allergy. *Id.* Buckmaster alleges that "[i]t is very appearent [sic] that neither [Health Services Administrator] Hamilton nor [Head of Nursing] Tycz has taken any reasonable measures to make notes or records regarding [Buckmaster's] medical charts and records[.]" *Id.* (capitalization in original omitted). He also alleges that neither Swaney nor Reyes have "taken any reasonable measures" to ensure that food service files or records reflect Buckmaster's banana allergy. *Id.*

As a result of the allergic reaction he suffered on February 25, 2026, Buckmaster alleges that he has been "Mentally and Emotionally Tramatized as well as Physically Affected by this event." Docket 1 at 4 (spelling and grammar errors in original). As relief, Buckmaster requests that his medical charts be changed to reflect his banana allergy, and that timely notices be posted any time there is a menu change. *Id.* at 7. He also requests $100,000 in punitive, nominal, and compensatory damages, "Individually and Severely [sic] . . . paid by defendants[.]" *Id.* Buckmaster also requests an additional $100,000 for the "mental and emotional duress [he has] suffered and continue[s] to suffer daily." *Id.* (capitalization in original omitted).

Count II of Buckmaster's complaint relates to his attempts to participate in a treatment program for opioid addiction. *Id.* at 5. Buckmaster claims that in 2023, prior to his incarceration, he suffered an opioid overdose and was placed in rehab. *Id.* While he was in rehab, he was placed on the Suboxone program

after being "clinically diagnosed with opioid disorder." *Id.* (capitalization in original omitted). When he was first incarcerated and completed an intake consultation, Buckmaster "made it very clear" that he was "clinically diagnosed with opioid disorder and was previously on Suboxone program." *Id.* (capitalization in original omitted). Although Buckmaster was told at his intake consultation that the South Dakota Department of Corrections (SDDOC) did not have a Suboxone program, a Suboxone Program for Medication Assisted Treatment (MAT)[6] was implemented when Buckmaster arrived at MDSP. *Id.*; *see also* Docket 1-1 at 9–10.

Buckmaster alleges that he has "repeatedly attempted to get on the MAT Program because [he has] an addiction to it[,]" but that "nothing is being done to help get [him] back on this program." Docket 1 at 5. (capitalization in original omitted). Buckmaster has been told by staff that the program is offered to other opioid addicts under the Americans with Disabilities Act, and alleges that therefore, "[he] too should Technically be on this MAT Program[.]" *Id.* Buckmaster lists various symptoms he has experienced as a result of his addiction, including difficulty sleeping, restlessness, muscle aches and pains, shakiness, high anxiety, and dizziness. *Id.*

As relief, Buckmaster requests that his medical records and charts be updated to place him on the MAT Program, and that the SDDOC "come into compliance with ADA Title II & 504 as [he has] a Protected Right as a Person

---

[6] Buckmaster alleges that he was placed on the MAT program after he successfully completed rehab treatment. Docket 1-1 at 9–10.

Clinicaly [sic] diagnosed with Opioid Disorder." *Id.* at 7. Buckmaster also requests $100,000 per defendant for nominal, punitive, and compensatory damages, as well as "for the Mental and Emotional Duress [he has] been Compelled to Endure." *Id.*

Buckmaster names the State of South Dakota and Governor Larry Rhoden, in his official capacity only, as defendants. *Id.* at 2. Buckmaster also sues Nicholas Lamb, the Secretary of Corrections for the SDDOC; Alejandro Reyes, Warden of MDSP; Bill Swaney, Food Service Aramark Supervisor at MDSP; Tammy Doyle, the DOC Administrative Officer Coordinator at MDSP; Amber Babutzke, the Harmon Unit Sergeant; Stephanie Hamilton, Health Services Administrator; and Rachel Tycz, Head of Nursing at MDSP, in both their individual and official capacities. *Id.* at 1–2; Docket 1-2 at 2–7.

### B.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th

Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This court will now assess Buckmaster's claims under 28 U.S.C. § 1915A.

### C.   Legal Analysis

#### 1.   Federal Tort Claims Act

Buckmaster states that the court has jurisdiction over his action pursuant to 28 U.S.C. § 1346(b), the Federal Tort Claims Act (FTCA). Docket 1

at 1. The FTCA permits recovery of money damages from the United States for certain torts caused by federal government employees acting within the scope of their duties. 28 U.S.C. § 1346(b)(1). But Buckmaster does not specify whom he brings FTCA claims against, or how the FTCA applies to his claims. *See generally* Docket 1. Further, Buckmaster only names state, and not federal employees, as defendants. Docket 1 at 1–2, Docket 1-2 at 2–7. The FTCA only applies to the acts of federal employees, not state employees, *see* 28 U.S.C. § 1346(b)(1). Therefore, any claims that Buckmaster intended to assert pursuant to the FTCA are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.    § 1983 Claims

#### a.    Claims Against the State of South Dakota

Liberally construing his complaint, Buckmaster brings claims against the State of South Dakota pursuant to 42 U.S.C. § 1983. Docket 1 at 1. The State of South Dakota is generally immune from suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Id.* (citations omitted). Thus, Buckmaster's § 1983 claims against the State of South Dakota are barred by

the Eleventh Amendment and are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

### b.      Individual Capacity Claims for Injunctive Relief

Buckmaster sues Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities for injunctive relief. Docket 1 at 2, 7; Docket 1-2 at 2–7. Buckmaster seeks injunctions ordering defendants to update his medical charts to reflect his banana allergy and opioid disorder, to notify him of menu changes, and to allow him to participate in the MAT Program. Docket 1 at 7. Therefore, the injunctive relief Buckmaster requests "concerns authority that the defendants have only in their official capacities." *Bird v. Mertens-Jones*, No. 4:21-CV-04197-KES, 2023 WL 1785572, at *8 (D.S.D. Feb. 6, 2023). "Thus, 'the only relief [Buckmaster] can obtain from these defendants in their individual capacities is damages[,]' and not injunctive relief." *Id.* (quoting *Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593 (D. Minn. 2020) (second alteration in original)); *see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity."). Therefore, Buckmaster's request for injunctive relief against Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz in their

---

[7] Liberally construing his complaint, Buckmaster also brings claims against the State of South Dakota under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, which the court addresses below. Docket 1 at 5, 7.

individual capacities is dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

> ### c.    Official Capacity Claims for Monetary Damages Against State Employees

Buckmaster sues all state employee defendants in their official capacities and requests monetary relief. Docket 1 at 2, 7; Docket 1-2 at 2–7. Rhoden, Lamb, Reyes, Doyle,[8] Babutzke, Hamilton, and Tycz are all employees of the State of South Dakota. *Id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, Buckmaster's official capacity claims against defendants are construed as claims against the State of South Dakota. *Id.* While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

---

[8] Doyle is listed as a defendant in Buckmaster's complaint. Docket 1 at 1; Docket 1-2 at 4. But Doyle is not listed as a defendant on the case caption of Buckmaster's motion for preliminary injunction. Docket 5 at 1. In his motion for preliminary injunction, Buckmaster states that Doyle "currently is not a listed defendant in the action. However as a result of Doyle's position as Corrections Specialist to ADA and Grievance Coordinator's [Buckmaster] leaves it to the Courts [sic] discression [sic] to add Doyle." *Id.* at 3. This court does not decide which defendants a plaintiff should name in his action. But because Doyle is listed as a defendant in Buckmaster's complaint, Docket 1 at 1, and because Buckmaster has not filed an amended complaint to alter the defendants in this action, the court includes Doyle as a defendant in this action.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The State of South Dakota has not waived its sovereign immunity. Further, Buckmaster seeks punitive damages against all defendants. Docket 1 at 7. "Punitive damages are not available against government officials sued in an official capacity[.]" *S.A.A. v. Geisler*, 127 F.4th 1133, 1140 (8th Cir. 2025) (en banc). Thus, Buckmaster's claims against Rhoden, Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

### d.    Official Capacity Claims Against Rhoden Seeking Injunctive Relief

Buckmaster names South Dakota Governor Larry Rhoden as a defendant in his official capacity only and refers broadly to the State of South Dakota's role in operating the SDDOC. Docket 1 at 2; Docket 1-1 at 4; Docket 1-2 at 2. Because the official capacity claims for monetary relief against Rhoden have been dismissed, the remaining claims against Rhoden are in his official capacity for injunctive relief.

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." *Warfield v. Hettich*, No. 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). But "[t]he governor's general-enforcement authority is not 'some connection' " for purposes of alleging an official capacity claim for

14

injunctive relief, and "a state governor with a broad duty to uphold state law is not a proper defendant." *Church v. Missouri*, 913 F.3d 736, 749–50 (8th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017)); *see also Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (recognizing that "general executive responsibility is an insufficient connection to the enforcement of a statute to avoid the Eleventh Amendment."). Here, Buckmaster provides nothing more than broad, conclusory statements regarding the Governor's general authority. *See* Docket 1 at 2; Docket 1-1 at 3; Docket 1-2 at 2. Therefore, Buckmaster's claims against Rhoden in his official capacity for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

> **e.      Eighth Amendment Individual Capacity Claims for Monetary Relief and Official Capacity Claims for Injunctive Relief**

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Buckmaster's individual capacity claims must allege that each individual defendant either

15

directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." *Warfield*, 2025 WL 957769, at *9 (citation modified). Here, Buckmaster seeks injunctions ordering defendants to update his charts to reflect his banana allergy and opioid disorder, to notify him of menu changes, and to allow him to participate in the MAT Program. Docket 1 at 7. Buckmaster has properly alleged claims seeking injunctive relief, as long as he "necessarily establish[es] a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

Liberally construing his complaint, Buckmaster brings Eighth Amendment deliberate indifference claims related to both his food allergy and his placement in the MAT Program. Docket 1 at 4, 5. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not

16

mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

17

### i.      Claim Related to Allergic Reaction

Liberally construing his complaint, Buckmaster alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz because they "Failed to take Appropriate Measures" to prevent an allergic reaction. Docket 1 at 2, 4; Docket 1-1 at 3–5.

For purposes of screening, the court assumes that Buckmaster has alleged the existence of a serious medical need. After his first allergic reaction, Buckmaster had difficulty breathing, felt his "throat begin to swell shut[,]" and had increased blood pressure. Docket 1 at 4. Buckmaster also "vomited multiple times in a 2 hour period[,]" and "was unable to hold down anything." Docket 1-1 at 4.

As for the second, subjective component, Buckmaster alleges that Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz were aware of his allergy-related medical needs through his grievances and visits to Health Services, but that his banana allergy has still not been accommodated, resulting in two more allergic reactions since the first incident on February 25, 2026, thereby putting his health at risk. Docket 5 at 2–5, Docket 1 at 4. Regarding the knowledge of each defendant specifically, Buckmaster attaches a "notice of injury" addressed to Lamb that detailed his allergic reaction, and alleges that Lamb has a duty to supervise DOC employees. Docket 1-1 at 3–5; Docket 1-2 at 2. Buckmaster claims that Swaney and Reyes failed to take reasonable measures to ensure his food allergy to bananas is reflected in food service files or records. Docket 5 at

18

5. Buckmaster asserts he filed a grievance with Doyle, but that she "blatantly [refused] to address this issue." *Id.* at 3 (alteration in original) (capitalization in original omitted). According to Buckmaster, Babutzke received Buckmaster's grievances related to his allergy but has not taken steps to ensure that Buckmaster does not have another allergic reaction. Docket 1-2 at 5–6. Lastly, Buckmaster alleges that "neither [Health Services Administrator] Hamilton nor [Head of Nursing] Tycz has taken any reasonable measures to make notes or records regarding [his] medical charts[,]" Docket 5 at 5, and that Hamilton and Tycz are "responsible for ensuring [Buckmaster's] health care." Docket 1-2 at 6 (capitalization in original omitted).

Although some of Buckmaster's allegations may constitute mere negligence, the court is unable to determine at this time that Buckmaster's claim for deliberate indifference is wholly without merit. Therefore, Buckmaster's Eighth Amendment deliberate indifference claim against Swaney in his individual capacity for monetary damages, and against Lamb, Reyes, Hamilton, Doyle, Babutzke, and Tycz in their individual capacities for monetary damages and official capacities for injunctive relief survives § 1915A screening.

### ii.     Claim Related to MAT Program

Liberally construing his complaint, Buckmaster also alleges an Eighth Amendment deliberate indifference claim against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz because he is not a participant in the MAT Program. Docket 1 at 5; Docket 1-1 at 9–14. As stated above, the deliberate indifference standard includes both an objective and subjective component,

and a plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany*, 132 F.3d at 1239 (citations omitted).

Beginning with the first component, "[a] serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Coleman*, 114 F.3d at 784 (citation omitted). Here, Buckmaster alleges that he had been "clinically diagnosed with opioid disorder." Docket 1 at 5 (capitalization in original omitted). As a result of not participating in the MAT program, Buckmaster alleges that he has suffered from headaches, dizziness, restless sleep, and high anxiety. *Id.* Therefore, the court assumes for screening purposes that Buckmaster has alleged the existence of a serious medical need. *See also Fisher v. Camden Cnty. Corr. Facility*, 2022 WL 1602158, at *4 (D.N.J. May 20, 2022) (assuming for screening purposes that a plaintiff alleged a serious medical need regarding his prescription for Suboxone.).

As for the second, subjective component, Buckmaster alleges that during his intake consultation when he was first incarcerated, he "made it very clear" that he was "clinically diagnosed with opioid disorder and was previously on suboxone program[,]" and that he has "repeatedly attempted to get on the MAT Program[.]" Docket 1 at 5 (capitalization in original omitted). Buckmaster alleges that defendants were made aware of his opioid disorder diagnosis and of his requests to receive treatment through the MAT Program through

20

grievances, but that "nothing is being done to help get [him] back on this program." *Id.* (capitalization in original omitted). *See also* Docket 1-1 at 9–15 (grievance addressed to Lamb regarding MAT program); *id.* at 22 (grievance requesting that Buckmaster be placed in the MAT Program reviewed by Babutzke and Doyle); Docket 1-2 at 2–3 (alleging that Reyes reviewed his grievance related to the MAT Program); *id.* at 6, 7 (claiming that Hamilton and Tycz are "responsible for ensuring [his] health care." (capitalization in original omitted)). While Buckmaster's allegations may constitute mere negligence or a disagreement with treatment decisions, the court is unable to determine at this time that Buckmaster's Eighth Amendment deliberate indifference claim is wholly without merit. Therefore, Buckmaster's individual capacity claims for monetary relief and official capacity claims for injunctive relief against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz survive § 1915A screening.

### f.      Official Capacity Claims Against Swaney

Liberally construing his complaint, Buckmaster also brings an Eighth Amendment deliberate indifference claim against Swaney, the Food Service Director at MDSP for Aramark Foods, in his official capacity.[9] Docket 1 at 2. An official capacity claim against a third party's employee is construed as a claim against the third party itself. *See Smith v. Iverson*, 2019 WL 4417548, at *7 (D.

---

[9] Aramark contracts with the State of South Dakota to provide food to the inmate population at MDSP. Docket 1-1 at 4; *see also Carter v. Wasko*, No. 4:22-CV-04103-RAL, 2023 WL 248233, at *2 & n.1 (D.S.D. Jan. 18, 2023) (recognizing for screening purposes that when a plaintiff alleges that a private corporation has contracted with the state to provide food services, the plaintiff has alleged that the corporation has acted under color of state law and can be sued under § 1983).

Neb. Sep. 16, 2019) (citations omitted). Therefore, claims against Swaney in his official capacity are effectively claims against Aramark.

"[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978)). A § 1983 complaint need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Construing the supplement to his complaint liberally, Buckmaster alleges that his Eighth Amendment rights have been violated by the policy or custom of making changes to the menu without notifying inmates with food allergies, as well as failing to update food service files to reflect food allergies. *See* Docket 5 at 2–5. After his initial allergic reaction, Buckmaster suffered two more allergic reactions when the menu was changed to include bananas without notifying him. *Id.* at 3, 5. Additionally, Buckmaster alleges that Swaney

22

has not "taken any reasonable measures" to ensure that food service files or records reflect Buckmaster's banana allergy. *Id.* at 5. Therefore, at this stage of the proceedings, Buckmaster has stated enough facts to support the existence of an unconstitutional policy or custom, and that he was injured as a result of this policy or custom.[10] Therefore, Buckmaster's Eighth Amendment deliberate indifference claim against Swaney in his official capacity for monetary damages and injunctive relief survives § 1915A screening.

### 3.    Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act

Liberally construing his complaint, Buckmaster also alleges claims under Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act (RA) against the State of South Dakota, Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz. Docket 1 at 5, 7; Docket 1-1 at 9–14. The court evaluates these claims together because "[t]he ADA and § 504 of the Rehabilitation Act are 'similar in substance' and, with the exception of the Rehabilitation Act's federal funding requirement, 'cases interpreting either are applicable and interchangeable' for analytical purposes." *Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013) (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012)).

As an initial matter, Buckmaster may not bring claims under the ADA or RA against individual defendants in their individual capacities. Title II of the ADA applies to public entities, defined as "any State or local government; any

---

[10] As discussed above, Buckmaster has alleged a plausible Eighth Amendment deliberate indifference claim regarding his food allergy. *See supra* at 18–19.

23

department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority[.]" 42 U.S.C. § 12131(1) (citation modified). Not included in this definition, however, are "defendants in their individual capacities[.]" *Maday v. Dooley*, No. 4:17-CV-04168-KES, 2018 WL 4334071, at *3 (D.S.D. May 30, 2018), *report and recommendation adopted by* 2018 WL 4047116 (D.S.D. Aug. 24, 2018). "The Eighth Circuit held in an *en banc* decision that Congress' designation of liability for 'public entities' under Title II of the ADA necessarily implied that there was no liability for individuals under that statute." *Id.*; *see also Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) ("We agree that the public-entity limitation precludes ADA claims against state officials in their individual capacities[.]"). Therefore, Buckmaster's ADA claim against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Similarly, Section 504 of the RA does not provide for individual capacity claims. *See Damron v. N.D. Cmm'r of Corrs.*, 299 F. Supp. 2d 970, 979 (D.N.D. 2004), *aff'd*, 127 F. App'x 909 (8th Cir. 2005) (per curiam); *Rudiger v. St. Francois Cnty.*, 2023 WL 5748439, at *3 (E.D. Mo. Sep. 6, 2023) ("Section 504 of the Rehabilitation Act simply do[es] not impose liability on individual defendants in their individual capacities." (alteration in original) (citation omitted)). Therefore, Buckmaster's RA claim against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities is dismissed for

24

failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

As for Buckmaster's ADA and RA claims against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their official capacities for injunctive relief, the Eighth Circuit has held that a state prisoner can bring an ADA *Ex parte Young* claim for prospective injunctive relief against state prison officials sued in their official capacities and that *Alsbrook* does not bar such a claim. *Arlt v. Mo. Dep't of Corrs.*, 229 F. Supp. 2d 938, 942 (E.D. Mo. 2002). The court now considers Buckmaster's ADA and RA claims against the State of South Dakota[11] and the state employees in their official capacities for injunctive relief.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "For a prima facie Title II ADA violation, a qualified individual with a disability must be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or be otherwise discriminated against by the entity, by reason of the individual's disability." *Folkerts*, 707 F.3d at 983 (citing

---

[11] Buckmaster seeks compensatory and punitive damages, as well as injunctive relief. *See* Docket 1 at 7. But punitive damages are not available under the ADA or the Rehabilitation Act. *Meagley v. City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011). As for compensatory damages, proof of discriminatory intent is required for a plaintiff to recover compensatory damages under the ADA and the Rehabilitation Act. *Id.* at 389. To demonstrate discriminatory intent, a plaintiff "must show that the [defendant] was deliberately indifferent to the rights secured to [him] by the ADA and Rehabilitation Act in order to recover compensatory damages." *Id.*

*Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)). "Recreational activities, medical services, and educational and vocational programs at state prisons are benefits within the meaning of Title II, and qualified individuals with a disability are entitled to meaningful access to such benefits." *Mason v. Corr. Med. Servs.*, 559 F.3d 880, 886 (8th Cir. 2009) (citation modified).

> Section 504 of the RA provides that:
>
> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "For a prima facie § 504 violation, a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds." *Folkerts*, 707 F.3d at 983 (citing *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981–82 (8th Cir. 2003)).

"The definition of 'disability' under the ADA is expansive and covers any 'physical or mental impairment that substantially limits one or more major life activities of [an] individual.' " *Klimek v. CentraCare Health Sys.*, 178 F.4th 1158, 1165 (8th Cir. 2026) (alteration in original) (citing 42 U.S.C. § 12102(1)). *See also Yelder v. Hegseth*, 151 F.4th 943, 953 (8th Cir. 2025) (recognizing that "[t]he Rehabilitation Act uses the same definition as the ADA for an individual with a disability[]" (citing 29 U.S.C. § 705(20)(B))). Here, Buckmaster alleges that because he has been diagnosed with opioid disorder he qualifies as a

26

disabled individual under Title II of the ADA. Docket 1 at 5; Docket 1-1 at 10. Buckmaster also alleges that his opioid disorder "severely affects [his] daily life's [sic] basic necessities[]" through cognitive issues and withdrawal symptoms. Docket 1-1 at 10 (capitalization in original omitted). Therefore, for screening purposes, Buckmaster has alleged that he is disabled under the ADA and RA.

The court must now determine whether Buckmaster was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity, by reason of his disability. Here, Buckmaster alleges that he is eligible for the MAT Program because he was diagnosed with opioid disorder, but that he has been denied participation in the program in violation of the ADA and RA. Docket 1 at 5, 7. While Buckmaster alleges that other inmates with opioid addictions have been able to participate in the MAT Program, *see* Docket 1 at 5, Docket 1-1 at 22, he does not allege that he has been denied access to the program *because of* his disability, and instead, only offers broad, conclusory statements that he has been discriminated against. *See, e.g.*, Docket 1-1 at 12, 13. When evaluating ADA and RA claims, "[t]here is a difference between alleging inadequate treatment for a prisoner's disability and alleging that a prisoner was denied access to medical services *because of* his or her disability." *Davis v. St. Louis Cnty.*, 2026 WL 864068, at *7 (E.D. Mo. Mar. 30, 2026) (recognizing that while the plaintiff sufficiently alleged a deliberate indifference to serious medical needs claim, "she does not allege facts sufficient to establish that such

27

inadequate treatment was discriminatory in nature."). *See also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (recognizing that suits under the ADA "cannot be based on medical treatment decisions[]"); *Scott v. Carpenter*, No. 4:23-CV-04020-RAL, 2023 WL 4249200, at *16 (D.S.D. June 29, 2023) ("Although [plaintiff] may be disabled under the ADA and claims that he did not receive his medication, he makes no allegations that he was not provided medication because of his disability or that his disability hindered his ability to receive his medication."); *Sheeler v. Cherry*, 2025 WL 824060, at *5 (M.D. Pa. Mar. 13, 2025) (dismissing ADA claim based on the denial of placement in a MAT program because "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA."). Therefore, Buckmaster's ADA and RA claims against the State of South Dakota, and against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their official capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.    Motion for Preliminary Injunction

Buckmaster also filed a motion for preliminary injunction, Docket 5, alleging two additional allergic reactions. *Id.* at 3, 5. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The primary function of a preliminary injunction "is to preserve the status quo until, upon final hearing, a court may grant full,

28

effective relief." *Id.* (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

"In the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (citation modified). "Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration." *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996) (citation omitted). It is not the role of federal courts to micro-manage state prisons. *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 733 (8th Cir. 1994). But putting the health of a prisoner in jeopardy because of failure to take steps to prevent an allergic reaction is a serious matter.

The court declines to rule on Buckmaster's preliminary injunction at this time, but directs defendants to respond to Buckmaster's motion for preliminary injunction, Docket 5, within 14 days of service. The court may then consider if a preliminary injunction should issue under Fed. R. Civ. P. 65(a).

29

## IV.  Conclusion

Thus, it is ORDERED:

1. That Buckmaster's motion for leave to proceed in forma pauperis (Docket 2) is granted.

2. That the Clerk of Court shall send a copy of this order to the appropriate financial official at Buckmaster's institution.

3. That the institution having custody of Buckmaster is directed that whenever the amount in Buckmaster's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Buckmaster's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

4. That any claims Buckmaster intended to assert pursuant to the FTCA are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That Buckmaster's § 1983 claims against the State of South Dakota are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. That Buckmaster's claims for injunctive relief against Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities are dismissed with prejudice for failure to state a claim

30

upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

7. That Buckmaster's claims against Rhoden, Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

8. That Buckmaster's official capacity claims for injunctive relief against Rhoden are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9. That Buckmaster's Eighth Amendment deliberate indifference claim related to his banana allergy against Swaney, in his individual capacity for monetary damages, and against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities for monetary damages and official capacities for injunctive relief survives § 1915A screening.

10. That Buckmaster's Eighth Amendment deliberate indifference claim related to the MAT Program against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their individual capacities for monetary relief and official capacities for injunctive relief survive § 1915A screening.

11. That Buckmaster's Eighth Amendment deliberate indifference claim against Swaney in his official capacity for monetary damages and injunctive relief survives § 1915A screening.

31

12. That Buckmaster's ADA and RA claims against the State of South Dakota, and against Lamb, Reyes, Doyle, Babutzke, Hamilton, and Tycz in their individual and official capacities are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13. That immediate service be effected. In order to accomplish immediate service, the court directs the Clerk of Court to issue summonses for Lamb, Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz and provide them to the United States Marshal Service.

14. That the United States Marshal Service serve the completed summonses, together with a copy of the complaint (Docket 1), supplements attached to the complaint (Dockets 1-1, 1-2), the motion for preliminary injunction (Docket 5), and this order, upon Lamb at the Department of Corrections in Pierre, South Dakota, and upon Reyes, Swaney, Doyle, Babutzke, Hamilton, and Tycz, at the Mike Durfee State Prison in Springfield, South Dakota.

15. That a courtesy copy of the complaint and supplements (Dockets 1, 1-1, 1-2), the motion for preliminary injunction (Docket 5), and this order be sent by e-mail to Addyson Aguirre, South Dakota Department of Corrections General Counsel.

16. That defendants respond to Buckmaster's motion for preliminary injunction (Docket 5) within 14 days of service. Additionally, defendants shall serve and file an answer or responsive pleading to

32

the complaint and supplements on or before 21 days following the date of service.

17.    That Buckmaster will keep the Court informed of his current address at all times.

Dated July 30, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE